HUMAN RESOURCES COMPANY,
Appellant,

v.

ALASKA COMMISSION ON POST–SECONDARY EDUCATION, STATE OF ALASKA, Diane Barrans, Director, Appellee.

No. S–7718.

Supreme Court of Alaska.

Oct. 16, 1997.

Michaela Kelley, Kelley & Kelley, Anchorage, for Appellant.

Teresa Williams, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

*OPINION*

PER CURIAM.

I. *FACTS AND PROCEEDINGS*

The Alaska Commission on Postsecondary Education (Commission) has jurisdiction over certain educational institutions, which are described generally in AS 14.48.020. One of the Commission's responsibilities is to issue certificates of authorization to those institutions.

Although the Commission's jurisdiction is delineated in a statute, the Commission historically has issued certificates of authorization to institutions that were exempt from its jurisdiction, if the institution elected to undergo the application process. This authorization presumably benefits the authorized institution because the certificate provides consumers with some reassurance of the institution's credentials.[1]

The Commission has asserted that it discontinued its practice of issuing certificates to exempt institutions in 1992 or 1993:

[s]ometime during the period 1992–93, the incumbent executive director determined that the Commission and the student revolving loan fund did not have the resources to review applications of exempt schools. As those schools came up for renewal, new "authorizations" were not issued.

Pursuant to the Commission's historical practice, Human Resource Company (HRC) had applied for and received several such certificates of authorization. In March 1995, HRC filed an application with the Commission to renew its authorization to operate as a postsecondary education institution. In a memorandum accompanying its application, HRC advised the Commission that

HRC does not offer Postsecondary Education. HRC prepares adults to take the

GED, provides K–12 remediation classes for out of school youth, and referral to a variety of vocational education. . . .

. . . HRC does not have an enrollment contract with students since our contracts are with governmental agencies and not with students directly.

On May 17, 1995, a Commission staff member wrote HRC advising that HRC was exempt from the Commission's authorization requirements. The staff member's letter also advised that "[i]n the event that you decide to institute postsecondary level courses, and you intend to charge those students tuition for that training, please contact us."

On September 1 HRC requested an administrative hearing to contest the Commission's finding that HRC was exempt from the Commission's authority. The Commission did not respond to the request. HRC made another request for a hearing on October 2.

On October 23 Diane Barrans, Executive Director of the Commission, wrote HRC a letter confirming the Commission staff's finding that HRC's programs were outside the ambit of the Commission's authority. The letter stated that "it is clear that Alaska Statutes exempt K–12 and GED programs from the Commission's authority. . . ." The letter also stated:

You have requested to appeal staff's decision to the Commission. You are free to address the Commission during the public testimony session at their next quarterly meeting. However, I would point out that staff is clearly complying with a point of law, not an appealable regulation or agency policy.

The Commission's next meeting is scheduled to be held at the Anchorage Sheraton Hotel, November 30 and December 1, 1995. . . . Please call my assistant . . . if you need additional information about this meeting.

No representative of HRC appeared at the Commission's meeting. However, in a letter dated December 6, HRC renewed its demand

---

1. Plaintiff's complaint notes that HRC wishes to "[r]epresent to vendors that it operates under the auspices of the Alaska Post Secondary Commission."

for an administrative hearing. The Commission's response was as follows:

> In none of [the materials sent to the Commission by HRC] is any disagreement asserting to the factual finding that your program offers adults basic education in grades K—12 and GED preparation courses. There is no right to an evidentiary hearing in the absence of a factual dispute....
>
> For the reasons stated herein, I am denying your request for an administrative hearing. This letter constitutes the final decision of the agency.

On January 12, 1996, HRC filed in the superior court a complaint against the Commission. As a remedy, HRC requested a "Writ of Mandamus requiring Defendant to issue Plaintiff authority to operate in Alaska as a Post Secondary Institution, with all the rights and responsibility attendant thereto," or alternatively that the court enjoin the Commission from ever attempting to regulate HRC in the future.

Rather than filing an answer, the Commission filed a motion for summary judgment. Among the Commission's arguments in its motion for summary judgment was that HRC's complaint "can only be maintained as an administrative appeal governed by appellate procedures."

HRC did not respond to the Commission's motion for summary judgment. Instead, on March 22, HRC filed a request for an extension of time to respond until after it conducted discovery. The Commission partially opposed the extension. The Commission agreed to a brief extension to allow HRC to respond to its motion for summary judgment, but opposed an extension of time to take discovery. After HRC served discovery requests on the Commission on April 12, the Commission filed a motion for a stay of discovery.

On April 26 HRC filed both an amended complaint and an opposition to the motion for stay of discovery. HRC's amended com-

plaint recited that HRC "files a direct action...."

On May 7 the Commission filed a second dispositive motion titled "Motion to Dismiss or, Alternatively, to Convert to an Appeal."

On May 13 the superior court issued an order stating, "Upon consideration of defendant's 'Motion to Dismiss or, Alternatively to Convert to an Appeal' and any opposition thereto ... this action is dismissed."

On July 25 the superior court awarded the Commission full attorney's fees, noting that the award was warranted because "this action was frivolous and fees were extremely reasonable, the hours used were reasonable, the State had advised the plaintiff of the proper action, and full fees would not deter appropriate appeals by similarly situated litigants."

HRC appeals. It argues that the superior court erred in (1) refusing to issue a writ of mandamus against the Commission, (2) dismissing HRC's lawsuit without allowing HRC to conduct discovery, and (3) refusing to address HRC's request to treat its action as an appeal.

## II. DISCUSSION

> A. Based on the application materials submitted by HRC, the Commission correctly determined that HRC is not within the Commission's jurisdiction.[2]

Alaska Statute 14.48, titled "Regulation of Postsecondary Educational Institutions," establishes restrictions on "postsecondary educational institutions" and empowers the Commission to administer the provisions of the chapter. Alaska Statute 14.48.020 prohibits a person from operating "a postsecondary educational institution in the state unless the institution has a valid authorization to operate issued under this chapter or is exempt from the provisions of this chapter." Alaska Statute 14.48.210(8) states that the term "postsecondary educational institution" includes

---

**2.** The agency's determination of this point is a question of law involving no agency expertise and is therefore reviewed under the substitution

of judgment standard. *Peninsula Correctional Health Care v. Department of Corrections,* 924 P.2d 425, 426 (Alaska 1996).

an academic, vocational, technical, home study, business, professional, or other school, college, or university, or other organization or person, offering educational credentials, or offering instruction or educational services primarily to persons who have completed or terminated their secondary education or who are beyond the age of compulsory high school attendance for attainment of educational, professional, or vocational objectives.

Alaska Statute 14.48.030(a) provides that "[i]nstitutions exclusively offering instruction at one, some, or all levels from preschool through grade 12 are exempt from the provisions of this chapter."

According to its submitted application materials, HRC "prepares adults to take the GED, provides K–12 remediation classes for out of school youth, and referral to a variety of vocational education and social service agencies."

■ In considering whether the Commission was correct in concluding on the basis of HRC's application materials that HRC is not within the Commission's jurisdiction, it will be helpful to consider separately two aspects of HRC's programs as described in HRC's application materials.

The first aspect of HRC's programs we consider is HRC's "remediation classes for out of school youth, and referral to a variety of vocational education and social service agencies." This aspect of HRC's programs clearly falls outside the jurisdiction of the Commission because (1) these programs do not fall within the statutory definition of "postsecondary education"[3] and (2) the programs fall within the statutory exemption.[4]

The second aspect of HRC's programs we consider is HRC's adult GED program. An argument can be made that HRC's adult GED program brings HRC within the Commission's jurisdiction: an organization offering an adult GED program may fall within the literal language of the statutory definition of a "postsecondary educational institution," because it is an organization "offering ... educational services ... to persons who ... are beyond the age of compulsory high school attendance for attainment of educational ... objectives."

■ Nevertheless, for three reasons we conclude that offering an adult GED program does not bring an organization within the Commission's jurisdiction.

First, our view is that an organization that offers an adult GED program falls within the terms of the above-mentioned statutory exemption: an organization that offers an adult GED program can fairly be characterized as one that offers "instruction at one, some, or all levels from preschool through grade 12."

■ Second, construing the term "postsecondary education" to encompass an adult GED program would be contrary to common usage. *See, e.g., Davila v. Davila,* 908 P.2d 1027, 1030 (Alaska 1995) (stating that "Fran obtained her GED in 1987, but has no postsecondary education except for a six-month computer training course"). Under Alaska law, words and phrases in statutes generally are to be construed according to their common and approved usage.[5]

Third, consideration of the purposes underlying the statutory scheme militates against a conclusion that an organization which offers adult GED programs is within the Commission's jurisdiction. As indicated in AS 14.48.010(a), the purposes underlying regulation of postsecondary educational institutions include:

(2) prohibiting the granting of false or misleading educational credentials;

---

3. A program described as one for out of school youth is not one which offers "educational credentials ... or offering instruction or educational services primarily to persons who have completed or terminated their secondary education or who are beyond the age of compulsory high school attendance for attainment of educational, professional, or vocational objectives." AS 14.48.210(8).

4. A program which "provides K–12 remediation classes" and "referral [services]" to "out of school youth" can fairly be characterized as "instruction at one, some, or all levels from preschool through grade 12." AS 14.48.030(a).

5. *See* AS 01.10.040.

(3) regulating the use of academic terminology in designating educational institutions;

. . . .

(5) providing for the preservation of essential academic records . . . .

Regulating an organization offering an adult GED preparation program would not serve any of these purposes.

B. *Given that the Commission was correct in concluding on the basis of HRC's application materials that HRC is not within its jurisdiction, HRC has no valid claim of entitlement to a permit from the Commission.*

The Commission has conceded that, historically, it issued certificates of authorization to institutions that were exempt from its jurisdiction, if the institution elected to undergo the application process.

 We note, however, that the Commission's historical practice does not provide a basis for HRC to argue that it is now entitled to receive such permits. *See Far North Sanitation, Inc. v. Alaska Pub. Util. Comm'n*, 825 P.2d 867, 870–71 & n. 5 (Alaska 1992) ("Jurisdictional defects deprive the agency of power to adjudicate or regulate the subject matter . . . . A party cannot, by waiver, endow an administrative agency with powers beyond those which are authorized by legislative grant.").

C. *In view of the foregoing discussion, the remainder of HRC's arguments are without merit.*

 Given that the Commission correctly concluded on the basis of HRC's application materials that HRC is not within the Commission's jurisdiction, there is no material factual dispute in this case, and HRC adduces no reason for us to conclude that it is entitled to any of the remedies it requests. Indeed, all of HRC's remaining claims before this court appear to be predicated on the assumption that the Commission has jurisdiction over HRC. Specifically, HRC offers no cogent argument that provides support for its claim that it is entitled to a writ of mandamus ordering the Commission to issue HRC a permit;[6] or for its claim that it was entitled to administrative hearings before the Commission;[7] or for its claim that Civil Rule 56(f) entitled it to a stay and to a discovery order in the superior court.[8]

Because HRC makes no valid argument as to why it is entitled to any of the relief it seeks, whether HRC's action is appropriately characterized as a direct action or as an appeal is irrelevant: HRC's action was properly dismissed because it could not succeed either as an appeal or as a direct action.

If, as HRC's brief seems to suggest, HRC is conducting activities that cause HRC to come within the Commission's jurisdiction, HRC is entitled to file a new application with the Commission containing information to this effect. However, under the rule requiring exhaustion of administrative remedies,[9]

**6.** As HRC states in its brief, "[m]andamus is proper to command an official to perform an act which is a positive command and so plainly prescribed as to be free from doubt, and the claim must be clear and certain . . . ." Since HRC is not under the Commission's jurisdiction, there is no basis whatsoever to command the Commission to issue the permit.

**7.** There is no right to an evidentiary hearing in the absence of a factual dispute. *See, e.g., Douglas v. State., Dep't of Revenue*, 880 P.2d 113, 117 (Alaska 1994); *Smith v. State, Dep't of Revenue, Child Support Enforc. Div.*, 790 P.2d 1352, 1353 (Alaska 1990).

**8.** Civil Rule 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

In its brief to this court, HRC failed to adduce any reason why the discovery it sought would have furnished HRC with "facts essential to justify [HRC's] opposition" to the Commission's motion to dismiss.

**9.** *See, e.g., Standard Alaska Prod. Co. v. State, Dep't of Revenue*, 773 P.2d 201, 206 (Alaska 1989); *Ben Lomond, Inc. v. Municipality of Anchorage*, 761 P.2d 119, 122 (Alaska 1988).

HRC is not entitled to any judicial relief until it does so.[10]

### III. CONCLUSION

The judgment of the superior court is AFFIRMED.

---

10. The conclusion that HRC must first exhaust its administrative remedies also applies to HRC's claim that it has "not even been refunded the $100.00 application fee."